BECKER, Circuit Judge,
concurring and dissenting.
While I agree with almost all of the majority opinion, I cannot join in the conclusion to Part IIA, pages 33 to 37, holding that a public employee is protected under the Petition Clause against retaliation for having filed a petition (in the nature of a lawsuit or grievance) addressing a matter of purely private concern. I would adopt the position of the seven other circuits which hold that a public employee plaintiff who has “petitioned” is in no better position than one who has merely exercised free speech. See Majority at 440 n. 19 (listing circuits).
I need not offer extended justification for my position, for the majority has already done so when describing these other circuits’ views at pages 19 to 33 of its opinion. Although the majority then arrives at a conclusion in contradistinction to its preceding analysis, the majority’s rationale supporting its conclusion pales by comparison with the reasoning of the other circuits and with the inexorable logic of McDonald v. Smith, 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985). In a nutshell, I simply do not believe that the fact that the government adopts a formal redress mechanism gives one who pursues it more protection than if the person had written a letter to the editor or made a speech. As the Supreme Court explained in McDonald:
The Petition Clause ... was inspired by the same ideals of liberty and democracy that gave us the freedoms to speak, publish, and assemble. These First Amendment rights are inseparable, and there is no sound basis for granting greater constitutional protection to statements made in a petition to the President than other First Amendment expressions.
472 U.S. at 48-85, 105 S.Ct. at 2791. The same holds true when the petition is addressed to the courts or to university officials.
In my view, the Supreme Court would be surprised to learn that, although, as a result of “the nature of the government’s mission as employer,” a public employer (such as Rutgers) can fire someone who “begins to say or do things that detract from the agency’s effective operation” so long as the speech is on a matter of private concern, Waters v. Churchill, — U.S. -, --, 114 S.Ct. 1878, 1888, 128 L.Ed.2d 686 (1994) (quoted in Majority at 441), the government cannot fire the same individual if he or she speaks after invoking a formal mechanism for the redress of grievances (or speaks through that forum). Such an interpretation of the Petition Clause, rather than making that clause a “trap for the unwary” as the majority contends would be the consequence of my interpretation, Majority at 442, is an invitation to the wary to formulate their speech on matters of private concern as a lawsuit or grievance in order to avoid being disciplined. This would undermine the government’s special role as an employer.
The majority argues that in contrast to speech on a matter of private concern, “when one files a ‘petition’ one is not appealing over government’s head to the general citizenry: when one files a ‘petition’ one is addressing government and asking government to fix what, allegedly, government has broken or has failed in its duty to repair.” Majority at 442. But the libelous letter to the President at issue in McDonald, 472 U.S. at 484-85, 105 S.Ct. at 2790-91, took the form of an address to government rather than the general citizenry, and yet the Court held that the letter received no greater constitutional protection as a result. And the fact that San Filippo’s speech addressed government did not make it any less disruptive of the workplace environment than if it had addressed *450 the general public; indeed, the speech may-have been more disruptive because it still reached the public (lawsuits, for example, are matters of public record) and, in addition, compelled the university to respond to the lawsuits and grievances.
The majority argues that it would undermine the Constitution’s purposes to allow government to punish someone for invoking a mechanism to which government has given “its constitutional imprimatur.” Majority at 442. However, the constitutional imprimatur of the Petition Clause applies equally to the letter to the President at issue in McDonald as to the lawsuits and grievances at issue here. By waiving sovereign immunity to suit or adopting grievance procedures, the government may give special statutory/regulatory imprimatur to these mechanisms as opposed to other forms of petitions such as letters, but it does not give them a special constitutional imprimatur. Moreover, the government has given its regulatory imprimatur to the letter at issue in McDonald by setting up an office in the White House that is designed to respond to correspondence. Finally, for lawsuits at least, the state’s waiver of sovereign immunity is not specific to suits by public employees and thus may not be at all meant as a recognition of an employee’s right to file repeated lawsuits against his or her employer.
Nor, by adopting such petition mechanisms, does the government somehow increase the employee’s interest in having free license to protest his or her employer’s decisions. For example, San Filippo would have had the same interest in protesting the failure of the chemistry department to recommend him for a full professorship if the university had not adopted a grievance procedure. Connick declares that this interest is outweighed by the university’s interest in regulating its work environment.
Finally, the majority’s suggestion that a contrary interpretation would render the Petition Clause a “dead letter” is hyperbolic. Inter alia, the clause would still have use when there is a “petition,” in lieu of more conventional speech. Moreover, even if all petitions now constitute speech (given the broad interpretation the Supreme Court has given to speech), I do not see why it matters that the guarantees overlap. There were certainly petitions that did not constitute speech when the First Amendment was ratified, meaning that the two clauses were not redundant when initially adopted. In addition, the First Amendment’s guarantees of free speech and a free press also substantially overlap. See Laurence H. Tribe, American Constitutional Law, § 12-22, at 971 & nn. 2-3 (2d ed. 1988). Cf. Branzburg v. Hayes, 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972) (“It has generally been held that the First Amendment does not guarantee the press a constitutional right of special information not available to the public generally.”). At least the Petition Clause serves the function of emphasizing that freedom to petition the government directly is an important part of freedom of speech and prevents courts from deleting the petition right. As the Supreme Court stated in McDonald, the right to petition “is an assurance of a particular freedom of expression.” 472 U.S. at 484-85, 105 S.Ct. at 2790-91. Thus, the majority’s “dead letter” argument cannot carry the day.
Present: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ROTH, LEWIS and McKEE, Circuit Judges, and POLLAK, District Judge.*